1
2
3
4
5
6
7

**LAW OFFICE OF ROBERT L. TEEL**
Robert Teel (SBN 127081)
*lawoffice@rlteel.com*
1425 Broadway, Mail Code:  20-6690
Seattle, WA 98122
Telephone: (866) 833-5529
Facsimile: (855) 609-6911

**LAW OFFICES OF**
**RONALD A. MARRON, APLC**
Ronald A. Marron (SBN 175650)
*ron@consumersadvocates.com*
Michael T. Houchin (305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

8
9

*Attorneys for Plaintiff and the Proposed Class*

10
11
12

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOYCE CASE, individually and on behalf of all others similarly situated,

*Plaintiff,*

v.

MERLIN ENTERTAINMENTS GROUP U.S. HOLDINGS INC., a Delaware corporation; LEGOLAND CALIFORNIA, LLC, a Delaware limited liability company; MERLIN ENTERTAINMENTS SHORT BREAKS LLC, a Delaware limited liability company; MADAME TUSSAUDS HOLLYWOOD LLC, a Delaware limited liability company; MADAME TUSSAUDS SAN FRANCISCO LLC, a Delaware limited liability company; and SAN FRANCISCO DUNGEON LLC,

*Defendants.*

Case No:  '20 CV 1049 BEN MSB

## CLASS ACTION

## COMPLAINT FOR:

(1) **VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750,** *et seq.*;
(2) **FALSE ADVERTISING, BUS. & PROF. CODE §§ 17500,** *et seq.*;
(3) **UNFAIR COMPETITION, CAL. BUS. & PROF. CODE §§ 17200,** *et seq.*;
(4) **BREACH OF CONTRACT;**
(5) **MONEY HAD A RECEIVED;**
(6) **NEGLIGENCE;**
(7) **FRAUD;**
(8) **CONVERSION; AND**
(9) **UNJUST ENRICHMENT**

## DEMAND FOR JURY TRIAL

1.      Plaintiff Joyce Case ("Plaintiff" or "Case"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, files this Class Action Complaint against Merlin Entertainments Group U.S. Holdings Inc. ("Merlin US"), LEGOLAND California ("Legoland LLC"), Merlin Entertainments Short Breaks LLC ("Merlin Short Breaks"), Madame Tussauds Hollywood, LLC ("Tussauds Hollywood"), Madame Tussauds San Francisco LLC ("Tussauds San Francisco"), and San Francisco Dungeon LLC ("San Francisco Dungeon") to, without limitation, stop Defendants' wrongful retention and conversion of customer funds and obtain damages and restitution as well as a declaration that Defendants' actions were unlawful as further set forth below. Merlin US, Legoland LLC, Merlin Short Breaks, Tussauds Hollywood, Tussauds San Francisco, and San Francisco Dungeon may be individually and collectively referred to herein as "Defendant" or "Defendants". Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and on information and belief as to all other matters, including, and based upon, *inter alia*, the investigation conducted by and through her attorneys which includes, without limitation, a review of Defendants' public documents, announcements, and wire and press releases published by and regarding Defendants, and information readily obtainable on the internet.

## I.  **NATURE OF THE ACTION**

2.      At all times relevant herein Defendants operated a theme park known as LEGOLAND California ("Legoland California"), as well as attractions in California such as Tussauds Hollywood, Tussauds San Francisco, and San Francisco Dungeon, and elsewhere in the United States, such as LEGOLAND Florida. Legoland California is a theme park, miniature park, and aquarium located in Carlsbad, California thematically based on the Lego toy brand.

3.      Defendants are affiliated with, and owned and controlled by, Merlin Entertainments Limited, a British based entertainment company ("Merlin Entertainments") which claims to be the world's second largest visitor attraction operator, running 130 attractions, 20 hotels, and six holiday villages in 25 countries across four

continents.  As a worldwide enterprise, Merlin Entertainments generated estimated 2019 revenues of over $2.2 billion, with over three million paid visitors to their Legoland California theme park.

4.     Merlin Entertainments holds the global, exclusive rights to the Lego brand for use in their theme parks worldwide.  The Legoland California theme park targets families with younger children who are drawn to the ubiquitous Lego brand toys as their central theme.  Development of this highly themed accommodation for families with younger children is central to Defendants' strategy for profitably exploiting their Legoland attraction customer offerings.

5.     Defendants have seen strong demand for all their Legoland theme parks and other attractions, including Legoland California, from their so-called "destination positioning" which extends their market reach and enhances revenues from both primary admissions (including single day and multi-day tickets and second gate admission fees), and commercial spending including the "up-sell" sale of food and beverages, retail merchandise, and souvenirs such as photos.  Group promotions, incentives, and marketing and "cluster ticketing" to groups in their target market of families with younger children (*e.g.*, girl and boy scouts troops, schools groups, faith-based groups, etc.) where Defendants apply flexible pricing and promotional strategies to (1) manage visitor numbers through periods of high and low attendance volume, (2) extend the length of stay, and (3) encourage repeat visits, has proven to be a very successful strategy to enhance Defendants' overall theme park-related revenue and increase the opportunities for up-selling and cross-selling their products, services, and merchandise.

6.     Defendants leverage the efficiency of their common operations through areas such as procurement, promotional activity, and technology. For example, Defendants' proprietary "Accesso ticketing – the accesso® 'Passport' ticketing system" has been successfully used to standardize ticketing across all of the Defendants' entity sales channels affording them greater opportunities to up-sell and cross-sell tickets, with a particular focus on improving the customer "digital journey".  Defendants' group office

staff supports the employees for all of Defendants' attractions by providing a broad range of services. Among the centrally provided support services are attraction development, attraction management, licensing, intellectual property management, marketing and promotion, recruiting, procurement, information technology, financial and contractual controls, regulatory compliance, audit services, legal, tax, payroll, administration, and finance and accounting.

7. When COVID-19 took hold in the United States in March 2020, hundreds of thousands of people fell ill, unemployment filings began to hit record highs, and the stock market crashed. As a result, many Americans experienced serious financial consequences.

8. To prevent the spread of disease, thousands of restaurants, movie theatres, amusement parks, and other entertainment venues, like Legoland California and Defendants' other attractions, were closed as much of the country took shelter at home. Countless planned sporting events, concerts, outings, and entertainment and attraction events, like trips to Legoland California and Defendants' other attractions, were cancelled. Closing of these venues, and cancellation of these events, should have meant that ticketholders were promptly refunded their money—money that in many cases was very much needed for other purposes.

9. But that did not happen for customers who bought tickets, memberships, and vacation packages for Defendants' attractions. Instead, Defendants failed to honor and perform their duties, responsibilities, and obligations under their uniform standardized agreements with their customers thereby breaching their contracts, but nonetheless pocketed their customers' money and converted it for their own use. Under the terms and conditions of their standardized uniform agreements, if Defendants cancel or are unable to perform their obligations, they must accept customer cancellations and refund all monies paid by the customer. But instead, Defendants are using the money they owe to their customers for their own benefit.

10. Plaintiff Case is one of the many consumers stuck with tickets to a cancelled event who has been unable to obtain a refund. On behalf of herself, and the tens if not

hundreds of thousands like her, she seeks an order requiring Defendants to promptly refund to customers all money paid for tickets, memberships, and vacation packages (including incidental charges and expenses such as service fees, delivery fees, foreign exchange fees, and the like) that have been cancelled, or that the customers were otherwise unable to use on the scheduled dates for Defendants' performance because of Defendants' cancellation. Plaintiff also seeks an award of damages to compensate Defendants' customers for the loss of use of their money during a time when cash is at a premium for the many families targeted by Defendants that are struggling to get by. Finally, Plaintiff requests an award of exemplary and punitive damages suitable to deter a billion-dollar worldwide enterprise like Merlin Entertainments from exploiting consumers in order to enrich themselves.

## II. <u>JURISDICTION AND VENUE</u>

11.    This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because:  (a) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (b) the proposed Class consists of more than 100 Class Members; (c) Defendants are citizens of a state different from that of the Plaintiff; and (d) none of the exceptions under the subsection apply to this action.

12.    This Court has supplemental jurisdiction over the violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq*., Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq*. and claims for breach of contract, money had and received, negligence, fraud, conversion, and unjust enrichment as well as any other state statutory and common law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).

13.    This Court has both general and specific personal jurisdiction over the Defendants because Defendants have conducted and continue to conduct substantial business in the State of California and County of San Diego.  Merlin Entertainments Group

U.S. Holdings Inc. is registered with the California Secretary of State to do business, and in fact does business in California under entity number C2998704.   LEGOLAND California LLC is registered with the California Secretary of State to do business, and in fact does business in California under entity number 200324210096.   Merlin Entertainments Short Breaks LLC is registered with the California Secretary of State to do business, and in fact does business in California under entity number 201815910435. Madame Tussauds Hollywood LLC is registered with the California Secretary of State to do business, and in fact does business in California under entity number 201122410252. Madame Tussauds San Francisco LLC is registered with the California Secretary of State to do business, and in fact does business in California under entity number 201320310100. San Francisco Dungeon LLC is registered with the California Secretary of State to do business, and in fact does business in California under entity number 201317110345.

14.     This Court has specific personal jurisdiction because Defendants have sufficient minimum contacts in and with California, and have intentionally availed themselves of the markets within California through the sale and provision of their goods and services to render the exercise of jurisdiction by this Court reasonable.

15.     Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district and Defendants conduct substantial business within this judicial district.

### III.  PARTIES

16.     Defendants are part of a multinational attractions company that owns, manages, and operates a portfolio of over 120 attractions in over 25 countries, including theme parks and related facilities throughout the United States and abroad, including the Legoland California and Legoland Florida theme parks in the United States. Merlin US is a Delaware corporation, and Legoland LLC, Merlin Short Breaks, Tussauds Hollywood, Tussauds San Francisco, and San Francisco Dungeon are Delaware limited liability companies.  Merlin US, Legoland LLC, and Merlin Short Breaks each list its principal

executive office in California as located at 1 Legoland Drive, Carlsbad, CA 92008. Tussauds Hollywood, Tussauds San Francisco, and San Francisco Dungeon list their address as 234 W. 42nd Street, New York, NY 10036.

17.   Defendants have, at all relevant times, engaged in trade or commerce in California by advertising and offering goods, services, merchandise, and vacation packages and accomodations to California consumers.

18.   Plaintiff Joyce Case is a citizen of the State of California and resides in Rancho Palos Verdes, California. Plaintiff Case has purchased tickets to Legoland California within the class period.

19.   At all times material to this action, acting alone or in concert with others, Defendants have advertised, marketed, distributed, and sold their entertainment services and goods to consumers in California and nationwide, and with respect to the acts and practices of each other Defendant that are described herein: (a) has dominated and controlled each other Defendant's acts and practices; (b) knew and approved of each Defendant's acts and practices; and (c) benefitted from each Defendant's acts and practices. At all times mentioned in the causes of action alleged herein, each Defendant was acting in concert with, and/or was an agent and/or employee of each and every other Defendant. In performing the acts and/or omissions stated herein, each Defendant was acting within the course and scope of a common enterprise, and with the consent and authorization of each of the remaining Defendants. All actions of each Defendant as alleged in the causes of action stated herein were aided, abetted, ratified, and approved by every other Defendant and/or its officers or managing agents.

## IV.  <u>COMMON FACTUAL ALLEGATIONS</u>

20.   Defendants operate highly successful attractions such as Legoland California, Madame Tussauds Hollywood, Madame Tussauds San Francisco, and the San Francisco Dungeon in the United States and, through their parent company Merlin Entertainments and their other affiliates, around the world. Customers who purchased tickets for Defendants' attractions in the United States entered into a contract with

Defendants and paid money to Defendants in exchange for access to their attractions for certain agreed upon dates.

21.     Defendants charged and received monies from tens, if not hundreds, of thousands of customers for tickets, memberships, and vacation packages, but then closed all of their attractions and theme parks as the COVID-19 virus spread throughout the world, thereby cancelling and failing to timely fulfill their obligations and breaching their agreements with their customers.  Yet despite closing their attractions, Defendants have made a knowing and willful, conscious decision to keep the monies their customers have paid them and convert it to their own use.

22.     Merlin Entertainments touts itself as the world's second largest visitor attraction operator behind Disney, and now claims to operate 130 attractions, 20 hotels across four continents.  Merlin Entertainments' is organized into three operating groups, one of which is the Legoland branded theme parks.  The company's eight Legoland branded parks (in California, Florida and other countries) had an estimated 15.7 million visitors in 2019.  Last year the parks generated estimated revenues of approximately $830 million, and estimated profits of approximately $227 million.

23.     At least twenty-two of Merlin Entertainments' attractions are in the United States, and four are in California, including Legoland California, Madame Tussauds Hollywood, Madame Tussauds San Francisco, and the San Francisco Dungeon. Defendants' attractions are generally open every day of the year.  Under the terms and conditions of their standardized uniform agreements for the purchase of tickets and passes for each of its attractions in the United States, Defendant promises that if Defendants cancel or are unable to perform their obligations, Defendant's must accept customer cancellations and refund all monies paid.

24.     To access Defendants' attractions, customers purchase either a day ticket/pass, multi-day ticket/pass, a membership pass, a vacation package, or some combination of the foregoing.  Tickets, fees, and vacation package prices vary widely depending on the particular purchase, the promotion, the season, and any applicable

1    incentives.

2    25.     To purchase a ticket, membership, or vacation package, customers typically

3    provide Defendants with credit card or debit card information online or at the park.  In the

4    case of monthly passes, Defendants then automatically charge their customers' credit or

5    debit cards as payments become due on a monthly basis.

6    26.     The Legoland California park first closed as a result of COVID-19 on or

7    about March 16, 2020 and remains closed until further notice.  Despite the closure,

8    Defendants have stubbornly refused to refund any of the amount customers paid for passes

9    or tickets.

10    27.     The standard form terms and conditions for ticket/pass purchases for

11    Legoland California and each of Defendants' attractions provide that a binding contract is

12    formed between the purchaser and Defendants when the booking is made.  The

13    standardized uniform contract also provides that if Defendants have to cancel, they will

14    offer their customers the choice of cancelling (or accepting Defendants' cancellation) in

15    which case Defendants promise their customers a full refund of all monies paid.

16    28.     However, Defendants have willfully refused to refund any ticket sales,

17    membership fees, or vacation package purchases.  Defendants continue to refuse to

18    reimburse pre-paid customers for the time they were unable to access the parks, and

19    continue charging customers full price monthly payment fees for monthly passes even

20    though every attraction they own in California (and in many other locations) remains

21    closed.  In the case of their monthly pay customers, Defendants are able to unilaterally

22    charge them for monthly fees without their consent as they are in possession of their

23    customers' debit and credit card information.

24    29.     Instead of reimbursing their customers, Defendants have made the deliberate

25    decision to convert their customers' money to their own use without performing under the

26    contract by instituting what they call their "peace of mind policy."  The so called "peace

27    of mind policy" provides that for annual pass holders not enrolled in monthly pay,

28    Defendants will give an extension of one month for every month the attraction is closed.

- 8 -

For pass holders enrolled in monthly pay, their monthly payments will be suspended starting April 1, 2020 until the attraction reopens.  The policy also provides that customers with unused tickets for specific dates during the closure period can use them on "any valid day [based on the ticket type purchased] for the rest of 2020" without additional fees.

30.     The sole reason Defendants' customers buy tickets and passes, pay monthly membership fees, and purchase vacation packages is to have *access* to Defendants' attractions, which are advertised as being available every day of the week, on the dates and at the times they chose and agreed to.  However, Defendants charged (and are charging) their customers full price while the attractions are closed, but denied customers all access to all attractions nationwide (and are still denying customers all access to most of their attractions nationwide), and simultaneously refused (and are continuing to refuse) to reimburse customers for payments already made.

31.     Plaintiff seeks relief in this action individually, and on behalf of all of Defendants' customers in California and nationwide that have paid or were charged for tickets, memberships, or vacation packages while Defendants' attractions were closed for violations of the CLRA, Civil Code §§ 1750, *et seq*., FAL, Bus. & Prof. Code §§ 17500, *et seq*., UCL, Bus. & Prof. Code §§ 17200, *et seq*., and for breach of contract, money had and received, negligence, fraud, conversion, and unjust enrichment.

## V.  **PLAINTIFF'S EXPERIENCE**

32.     Plaintiff Joyce Case is a resident of Rancho Palos Verdes located in the county of Los Angeles in the State of California.  During the Class Period Ms. Case purchased tickets for one of Defendants' attractions, specifically Legoland California, after visiting Defendants' websites and reading the terms and conditions for purchasing tickets. Ms. Case's two daughters are members of a girl scout troop in Rancho Palos Verdes, California.  Ms. Case had intended to use three day-tickets for her and her two daughters to visit Legoland California for a girl scout troop trip on March 21, 2020.

33.     Ms. Case was one of a group of parents in the girl scout troop who asked one of the troop leaders as their agent to handle the purchase of 47 day-tickets (adult and child)

for the March 21st trip.  Ms. Case gave the troop leader a check for $114 for her three tickets ($38 per ticket).  Non-discounted day-tickets at Legoland California can range from $89.99 to $114.99, and passes from $149.99 to $299.99, depending on what's included (such as the Legoland park, water park and aquarium).  Prices also depend on available discounts.

34.     A girl scout credit card was used to purchase all the troop members' tickets, with a $50 deposit in January 2020, and the balance paid on or about March 9th.  Funds from Ms. Case and the other parents were used to pay the card account.  One or more membership passes were also purchased from Defendants.  The troops' tickets and the membership pass(es) were purchased directly from Legoland, not a third-party seller.

35.     The troop leader tried to have the tickets refunded through phone calls and emails with Defendants' personnel, even before the park gave notice on or about March 13, 2020 that it would close, but Defendants refused.  She again sought a refund for the tickets approximately one week before the scheduled March 21st trip, and after Legoland California announced it had closed.  Defendants again refused to issue a refund.

36.     Defendants had initially told the troop leader that the troop would have to reschedule as a group because the tickets were purchased through a special program for girl scouts with tickets heavily discounted.  Defendants' representatives falsely represented that this was consistent with their policy.  Defendants ultimately agreed to "make an exception" to their policy by allowing the families to reschedule individually within a year of the scheduled date without any additional fees, but refused to issue any refunds.  For the Legoland California membership pass(es), Defendants represented that they will tack on to the expiration date the period of time that Legoland California is ultimately closed.

37.     Plaintiff intends to, seeks to, and will purchase tickets for Defendants' attractions in the future when she can do so with the assurance that the advertising of Defendants' services and goods are lawful and consistent with applicable laws and regulations and that their representations are true and their promises and agreements will be honored.

# VI.  <u>CLASS ACTION ALLEGATIONS</u>

38.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), and 23(c)(4).

39.     **The Nationwide Class is defined as follows:**

All persons residing in the United States who paid monies during the period from March 13, 2016 until the applicable opt-out date, inclusive, to have access to attend one or more of Defendants' attractions during the period such attractions were closed.

Such persons are referred to herein individually as a "Nationwide Class Member" and collectively as the "Nationwide Class".

40.     **The California Class is defined as follows:**

All persons residing in the United States who paid monies during the period from March 13, 2016 until the applicable opt-out date, inclusive, to have access to attend one or more of Defendants' attractions in California during the period such attractions were closed.

Such persons are referred to herein individually as a "California Class Member" and collectively as the "California Class".

41.     The Classes described in this Complaint may be collectively or individually referred to as the "Class" or "Classes" and proposed Members of the Classes may be individually and collectively referred to herein as "Class Members."

42.     The following people are excluded from the Class: (a) any judge or magistrate presiding over this action and members of their families; (b) Defendants, Defendants' subsidiaries, parents, successors, predecessors, affiliates, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) Plaintiff's counsel and Defendants' counsel; and (f) the legal representatives, successors, and assigns of any such excluded persons.

43.     Plaintiff satisfies the numerosity, commonality, typicality, adequacy, and

predominance prerequisites for suing as representative parties pursuant to Rule 23 of the Federal Rules of Civil Procedure.

44. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but is believed to consist of tens of thousands, if not hundreds of thousands, of customers making individual joinder in this case impracticable. Class Members can be easily identified through Defendants' records and objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other consumer fraud, unlawful trade practices, and class action controversies.

45. **Typicality**: Plaintiff's claims are typical of the claims of other Class Members in that Plaintiff and the Class Members sustained damages that all arise out of Defendants' contracts, agreements, wrongful conduct and misrepresentations, false advertising, and unlawful practices, and Plaintiff and the Class Members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

46. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with or are antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. In addition to satisfying the prerequisites of FRCP 23(a), Plaintiff satisfies the requirements for maintaining a class action under FRCP 23(b)(2), (b)(3), and (c)(4).

47. During the Class Period, Defendants represented on their attraction webpages in standardized uniform language that if Defendants had to cancel, they would offer Class Members the right of "cancelling or accepting the cancellation in which case you [the Class Member] will receive a full refund of all monies you have paid to us [Defendants]." Class Members purchased tickets, memberships, and vacation packages that were misleadingly and deceptively advertised as being refundable, and promising Class Members a full refund of all monies paid by Defendants if Defendants were unable to

perform.  The refund representation and promise was false.

48.    Plaintiff and the Class Members all purchased tickets, memberships, or vacation packages for access and admission to Defendants' attractions, were deceived by the false and deceptive representations and advertising, subjected to unfair business practices, and lost money as a result of such practices, misconduct, and breaches of their agreements with Defendants.

49.    Because Defendants' misrepresentations were made during and in connection with the  ticket, membership, and vacation package purchasing process, all Class Members including Plaintiff were exposed to and continue to be exposed to Defendants' misrepresentations and subjected to their misconduct.  If this action is not brought as a class action, Defendants can continue to deceive consumers, breach their contracts, and violate the  law with impunity.

50.    **Commonality and Predominance**: There are numerous questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class Members. Common questions for the Class include, but are not necessarily limited to the following:

a.  Whether Defendants failed to provide Plaintiff and the Class a full refund of all monies paid to Defendants;

b.  Whether Defendants' advertising omissions and misrepresentations constituted false advertising under California law;

c.  Whether Defendants' conduct constituted a violation of California's Unfair Competition Law;

d.  Whether Defendants' conduct constituted a violation of California's Consumer Legal Remedies Act;

e.  Whether Defendants' misrepresentations and omissions about Plaintiff's and the Class' right to a refund was likely to deceive, confuse, or create a misunderstanding;

f.  Whether Defendants misrepresented their products and services to include

- 13 -

characteristics, uses, or benefits which they do not have;

g.  Whether Defendants advertised their products and services with intent not to sell them as advertised;

h.  Whether Defendants misrepresented that their products and services were the subject of a transaction which had been supplied in accordance with previous representations when they had not;

i.  Whether Defendants breached their contracts with Plaintiff and the Class;

j.  Whether Plaintiff and the Class were damaged as a proximate cause or result of Defendants' breaches;

k.  Whether Defendants' conduct, practices, and misrepresentations related to the marketing, advertising, and sales of tickets for their goods and services, including without limitation admissions to their attractions, were unfair, deceptive, confusing, misleading, and/or unlawful in any respect, thereby violating the FAL, UCL, and other applicable state laws;

l.  Whether Defendants collected, took, or received monies in Defendants' possession and belonging to Plaintiff and the Class and wrongfully converted such monies to their own use and benefit;

m. Whether Plaintiff and the Class are entitled to rescission, restitutionary, injunctive, declaratory, or other relief; and

n.  Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

51.  **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. A class action is superior to individual litigation because: (a) the amount of damages available to individual plaintiffs are insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure; (b) individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay

and expense to all parties and the court system; and (c) the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

52.     In addition, class certification is appropriate under FRCP Rule 23(b)(1) or (b)(2) because:  (a) the prosecution of separate actions by the individual Members of the proposed Class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Class as a whole.

53.     The damages suffered by the individual Class Members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Class Members to obtain effective relief from Defendants' misconduct. Even if Class Members could sustain such individual litigation it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

54.     Defendants have acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole. In addition, Class damages will be adduced and proven at trial through expert testimony and other

competent evidence, including evidence exclusively in Defendants' possession. California law holds that the amounts paid by consumers for falsely advertised services and goods is a proper measure of Class damages. Class treatment is therefore appropriate under Federal Rule of Civil Procedure 23.

55.     On information and belief, based on publicly available information, Plaintiff alleges that the total amount in controversy exclusive of fees, costs, and interest, based on the estimated revenues for sales for each of the Nationwide Class and California Class during the proposed Class Period, exceeds $5 million.

## VII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT

#### CAL. CIV. CODE §§ 1750 *ET SEQ.*

56.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

57.     Plaintiff brings this claim individually and on behalf of members of the proposed California Class against Defendants.

58.     The CLRA prohibits unfair or deceptive practices in connection the sale of goods or services to a consumer.

59.     Moreover, the CLRA is meant to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

60.     The tickets, memberships, and vacation packages that Defendants sell and provides are "Goods" as defined by the CLRA. Cal. Civ. Code § 1761(a). Access to Defendants' attractions that Plaintiff and Class Members purchased from Defendants is a "Service" as defined by the CLRA. Cal. Civ. Code § 1761(b).

61.     Plaintiff and Class Members are "consumers" who paid fees for tickets, access to, and use of Defendants' attractions for personal, family or household purposes

as defined by the CLRA.  Cal. Civ. Code § 1761(d).

62.    Each of the purchases made by the Plaintiff and the Class Members from the Defendants were "Transactions" as defined by the CLRA.  Cal. Civ. Code § 1761(e).

63.    Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods and services to consumers.

64.    Defendants' advertising that their attractions would be available to their customers, and that their customers would have access to their attractions upon paying for a ticket, a membership, or a vacation package, is false and misleading to a reasonable consumer, including Plaintiff, because Defendants in fact closed all of their attractions while either refusing to refund the  monies paid or continuing to charge the full price of membership.

65.    Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5) of the CLRA because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendants misrepresented the particular characteristics, benefits, and quantities of the goods and services.

66.    Cal. Civ. Code § 1770(a)(7) also prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendants misrepresented the particular standard, quality or grade of the goods and services.

67.    Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services

with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendants advertises services with the intent not to sell the goods and services as advertised.

68.    Cal. Civ. Code § 1770(a)(14) further prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."  By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(14), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendants are representing that the ticket, membership, and vacation package purchase transactions confers or involves rights, remedies, or obligations that they does not have which was intended to result in the sale of goods and services.

69.    Plaintiff and the Class acted reasonably when they purchased Defendants' tickets, memberships, and vacation packages on the belief that Defendants' misrepresentations were true and lawful.

70.    Plaintiff and the Class suffered tangible, concrete, injuries in fact caused by Defendants because: (a) they would not have purchased or paid for Defendants' tickets, memberships, and vacation packages absent Defendants' misrepresentations and omissions of a warning that they would not in fact be open on the dates for admission in the agreement; (b) they would not have purchased or paid for Defendants' tickets, memberships, and vacation packages absent Defendants' misrepresentations and omissions of a warning that they would not refund monies paid to customers and continue charging customers' credit cards and debit cards while all of Defendants' attractions in California (and nationwide) are closed; (c) they would not have purchased or paid for Defendants' tickets, memberships, and vacation packages memberships on the same terms absent Defendants' misrepresentations and omissions; (d) they paid a price premium for Defendants' tickets, memberships, and vacation packages based on Defendants'

- 18 -

misrepresentations and omissions; (e) Defendants' tickets, memberships, and vacation packages sold for access to Defendants' attractions did not have the characteristics, benefits, or quantities as promised; and (f) Defendants never intended to refund monies paid for their tickets, memberships, and vacation packages.

71.   On information and belief, Defendants' violations of the CLRA discussed above were done with the actual knowledge, intent, and awareness that the conduct alleged was wrongful.

72.   On information and belief, Defendants committed these acts knowing they would harm Plaintiff and Class Members.

73.   Plaintiff and Class Members were harmed as a direct and proximate result of Defendants' violations of the CLRA and are thus entitled to a declaration that Defendants violated the CLRA.

74.   Plaintiff, on behalf of herself and Class Members, seeks injunctive relief under Civil Code § 1782(d).

75.   Under California Civil Code § 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Defendants' violations of the CLRA. Plaintiff will mail an appropriate demand letter consistent with California Civil Code § 1782(a). If Defendants fail to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to include a request for damages as permitted by Civil Code § 1782(d).

76.   Upon satisfaction of any conditions precedent, Plaintiff and the Class Members will request the Court enter an order awarding them mandatory restitution, and that they are entitled to recover their reasonable attorneys' fees.  Plaintiff and the Class Members also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

### SECOND CAUSE OF ACTION

**VIOLATIONS OF THE FALSE ADVERTISING LAW**

**CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.***

77.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

78.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendants.

79.    Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

80.    Defendants engaged in a scheme of selling customers tickets, memberships, and vacation packages, and in the cases of monthly memberships charging customers full monthly membership fees while their attractions were closed, and refusing to refund the monies paid therefore when they cancelled. Defendants' advertising and marketing of their attractions as being accessible on the day of admission and during the membership fee period, and that customers would receive a refund if Defendants' cancelled, misrepresented and/or omitted the true content and nature of Defendants' services. Defendants knew that these statements were unauthorized, inaccurate, and misleading.

81.    Defendants' advertising that their attractions would be available to their customers on the day of admission for the ticket purchase and during the membership period, that their customers would have access to their attractions upon buying a ticket or paying a membership fee, and that customers would receive a refund if Defendants cancelled, is false and misleading to a reasonable consumer, including Plaintiff, because Defendants in fact closed all of their attractions without issuing a refund and while

continuing to charge their customers the full price of memberships.

82.     Defendants violated § 17500, *et seq.* by misleading Plaintiff and the Class to believe that they would have access to the attractions or receive a refund, and be charged membership fees in exchange for and while having access to Defendants' attractions.

83.     Defendants knew, or should have known through the exercise of reasonable care, that their advertising of their attractions as being accessible on the day of admission upon buying a ticket, during the vacation package stay, and during the membership period, is false and misleading. Further, Defendants knew or should have known that they were breaking their promises to their customers when they refused to issue refunds for fraudulently sold tickets, memberships, and vacation packages, and continuing to charge fees while all of their attractions were closed.

84.     Plaintiff and the Class lost money or property as a result of Defendants' FAL violations because: (a) they would not have purchased or paid for Defendants' tickets, memberships, and vacation packages absent Defendants' misrepresentations and omissions of a warning that they would not in fact be open on the dates for admission in the agreement; (b) they would not have purchased or paid for Defendants' tickets, memberships, and vacation packages absent Defendants' misrepresentations and omissions of a warning that they would not refund monies paid to customers and continue charging customers' credit cards and debit cards while all of Defendants' attractions nationwide are closed; (c) they would not have purchased or paid for Defendants' tickets, memberships, and vacation packages memberships on the same terms absent Defendants' misrepresentations and omissions; (d) they paid a price premium for Defendants' tickets, memberships, and vacation packages based on Defendants' misrepresentations and omissions; (e) Defendants' tickets, memberships, and vacation packages sold for access to Defendants' attractions did not have the characteristics, benefits, or quantities as promised; and (f) Defendants never intended to refund monies paid for their tickets, memberships, and vacation packages.

*Case v. Merlin Entertainments Group U.S. Holdings Inc., et al.*
CLASS ACTION COMPLAINT

85.     Under the FAL, "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

86.     Plaintiff and the Class suffered tangible, concrete injuries in fact as a result of Defendants' actions as set forth herein because they purchased tickets, memberships, and vacation packages in reliance on Defendants' false and misleading marketing claims that they would receive a refund if Defendants had to cancel.

87.     Plaintiff and the Class suffered tangible, concrete injuries in fact as a result of Defendants' actions as set forth herein because they purchased tickets, memberships, and vacation packages in reliance on Defendants' false and misleading marketing claims that they would have access to the attractions during the agreed upon time.

88.     Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants advertised their tickets, memberships, and vacation packages in a manner that is untrue and misleading, which Defendants knew or reasonably should have known.

89.     Defendants profited from the sales of the falsely and deceptively advertised tickets, memberships, and vacation packages to unwary and believing consumers.

90.     As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and Class Members are entitled to injunctive and equitable relief and restitution.  Plaintiff and the Class Members have suffered damages in an amount to be determined at trial.  Plaintiff and the Class Members request the Court enter an order awarding Plaintiff and the Class Members compensatory and punitive damages.

91.     Plaintiff and the Class Members request the Court enter an order awarding them mandatory restitution and that they are entitled to recover their reasonable attorneys' fees.  Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those

recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### VIOLATIONS OF THE UNFAIR COMPETITION LAW

### CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*

92.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

93.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendants.

94.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

95.     Defendants' advertising that customers would receive a refund if Defendants cancelled, that their attractions would be available to their customers, and that their customers would have access to their attractions upon buying a ticket or vacation package, or paying a membership fee, is false and misleading to a reasonable consumer, including Plaintiff, because Defendants in fact closed all of their attractions without refunding customers the monies they paid, and they continued to charge their customers the full price of memberships.

96.     **Unlawful:** The acts alleged herein are "unlawful" under the UCL in that they violate as described herein at least the following laws:

The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and

The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

97.     **Fraudulent:** A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

98.     As set forth herein, Defendants' claims relating to the online marking of their tickets, memberships, and vacation packages are likely to deceive reasonable consumers and the public.  Defendants violated the "fraudulent" prong of the UCL by misleading Plaintiff and the Class to believe that they would only be charged for tickets, memberships, and vacation packages when they would have access to Defendants' attractions, and would receive a refund if Defendants cancelled.

99.     **Unfair:**  Defendants' conduct with respect to the advertising and sale of their tickets, memberships, and vacation packages is unfair because their conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

100.   Defendants' business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendants' advertising and promise they would refund monies paid by customers if they had to cancel and then refusing to do so, and their charging of membership fees while their attractions are closed, is of no benefit to consumers.

101.    Defendants' conduct with respect to the advertising and sale of their tickets, memberships, and vacation packages was also unfair because it violated public policy as declared by specific statutory or regulatory provisions, including but not limited to the FAL and CLRA.

102.   Defendants' conduct with respect to the advertising and sale of their tickets, memberships, and vacation packages was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

103.   Plaintiff and the Class acted reasonably when they purchased tickets, memberships, and vacation packages based on the belief that they would either receive a refund if Defendants had to cancel, and only be charged if Defendants' attractions were

- 24 -

open and accessible.

104.   Defendants profited from the sale of their falsely, deceptively, and unlawfully advertised tickers, memberships, and vacation packages to unwary consumers.

105.   Plaintiff and the Class lost money or property as a result of Defendants' UCL violations because:  (a) they would not have purchased or paid for Defendants' tickets, memberships, and vacation packages absent Defendants' misrepresentations and omissions of a warning that they would not in fact be open on the dates for admission in the agreement; (b) they would not have purchased or paid for Defendants' tickets, memberships, and vacation packages absent Defendants' misrepresentations and omissions of a warning that they would not refund monies paid to customers and continue charging customers' credit cards and debit cards while all of Defendants' attractions nationwide are closed; (c) they would not have purchased or paid for Defendants' tickets, memberships, and vacation packages memberships on the same terms absent Defendants' misrepresentations and omissions; (d) they paid a price premium for Defendants' tickets, memberships, and vacation packages based on Defendants' misrepresentations and omissions; (e) Defendants' tickets, memberships, and vacation packages sold for access to Defendants' attractions did not have the characteristics, benefits, or quantities as promised; and (f) Defendants never intended to refund monies paid for their tickets, memberships, and vacation packages.

106.   Plaintiff and Class Members are likely to be damaged by Defendants' deceptive trade practices, as Defendants continues to disseminate, and are otherwise free to continue to disseminate, misleading information. Thus, injunctive relief enjoining this deceptive practice is proper.

107.   Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members, who have suffered concrete tangible injury in fact as a result of Defendants' fraudulent, unlawful, and unfair conduct.

108.   In accordance with Bus. & Prof. Code § 17203, Plaintiff, on behalf of herself, Class Members, and the general public, seek an order enjoining Defendants from

continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

109.   Plaintiff, on behalf of herself and Class Members, also seeks an order for the restitution of all monies from the sale of the falsely advertised tickets, memberships, and vacation packages that Defendants unjustly acquired through acts of unlawful competition.

110.   Plaintiff and the Class Members have suffered damages in an amount to be determined at trial.  Plaintiff and the Class Members request the Court enter an order awarding them compensatory and punitive damages.

111.   Plaintiff and the Class Members request the Court enter an order awarding them mandatory restitution and that they are entitled to recover their reasonable attorneys' fees.  Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT

112.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

113.   Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants.  Plaintiff also brings this claim individually and on behalf of members of the proposed California Class against Defendants.

114.   Plaintiff and each Class Member entered into a written, uniform, standardized agreement and contract with Defendants.  Pursuant to the terms of the agreement, Defendants agreed, amongst other obligations, that if they had to cancel, Plaintiff and the

Class Members could likewise cancel, or accept Defendants' cancellation.  In either case, Plaintiff and the Class were to receive a full refund of all monies paid to Defendants.

115.  Defendants breached their agreement with Plaintiff and the Class by refusing to issue refunds and by continuing to charge debit and credit cards while their attractions remain closed.  Plaintiff and Class Members have suffered an injury by not receiving refunds and through payment of membership fees while not having access to Defendants' attractions.

116.  Defendants breached the agreement as alleged herein, and Plaintiff and the Class have been damaged as a direct and proximate result thereof. Plaintiff and the Class are entitled to actual damages in an amount to be determined in this proceeding.  Plaintiff and the Class Members request the Court enter an order awarding Plaintiff and the Class Members compensatory damages.

117.  Plaintiff and the Class Members request the Court enter an order awarding them mandatory restitution and that they are entitled to recover their reasonable attorneys' fees.  Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## **FIFTH CAUSE OF ACTION**

### **MONEY HAD AND RECEIVED**

118.  Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

119.  Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants. Plaintiff also brings this claim individually and on behalf of members of the proposed California Class against Defendants.

120.   As an alternative to the cause of action for breach of contract, and without intending to make an election of remedies, Plaintiff and the Class seek restitution from Defendants for money had and received.

121.   Defendants received money from Plaintiff and the Class that was intended to be used for their benefit.

122.   Defendants did not use the money received from Plaintiff and the Class for their benefit and has not returned or refunded the money to them.  As a matter of equity and good conscience that money should be returned to Plaintiff and the Class Members.

123.   Plaintiff and the Class Members request the Court enter an order awarding them mandatory restitution and that they are entitled to recover their reasonable attorneys' fees.  Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE

124.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

125.   Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants. Plaintiff also brings this claim individually and on behalf of the members of the proposed California Class against Defendants.

126.   As set forth herein, Defendants misrepresented that customers would receive a refund if Defendants had to cancel, and at that Defendants' attractions would be accessible on the day the ticket was purchased for, and in the case of memberships, virtually every other day of the year. However, Defendants did not in fact issue refunds to

customers when they cancelled and closed the attractions.

127.   At the time Defendants made these misrepresentations, Defendants knew or should have known that these misrepresentations were false.  Defendants negligently misrepresented and or negligently omitted material facts about the purchase of tickets, memberships, and vacation packages.

128.   In providing their services and good to Plaintiff and the Class Members, Defendants owed a duty to exercise reasonable care to make full, fair, and adequate disclosure in connection with the characteristics, uses, benefits, standards, quality, attributes, and nature of their tickets and attractions. This duty included, among other things, taking reasonable measures to protect the rights of Class Members in compliance with applicable law, including, but not limited to, procedures and policies to supervise, restrict, limit, and determine the accuracy and truthfulness of their representations, materials, and advertising in connection with their goods and services.

129.   In providing tickets, memberships, and vacation packages to Plaintiff and the Class Members, Defendants owed a duty to exercise reasonable care regarding and when making their refund representations  in connection with the characteristics, uses, benefits, standards, quality, attributes, and nature of their goods and services. It was foreseeable that if Defendants did not take reasonable measures to ascertain and ensure the accuracy and truthfulness of their representations Plaintiff and the Class Members would rely on their representations and purchase tickets they thought would be refundable if Defendant cancelled.  Defendants should have known to take precautions to ensure their advertising, materials, and representations were accurate.

130.   The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class Members to purchase Defendants' tickets, memberships, and vacation packages.  Plaintiff and Class Members would not have purchased Defendants' tickets, memberships, and vacation packages, or would not have purchased these items on the same terms, if the true facts had been known. The negligent actions of Defendants

caused damage to Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

131.   Defendants' negligence was a substantial factor in causing harm to Plaintiffs and Class Members. As a direct and proximate cause and result of Defendants' failure to exercise reasonable care and use reasonable measures to ensure the accuracy of their representations and advertising, Plaintiffs and Class Members have suffered actual injury-in-fact and economic damages, including incurring ticket, membership, and vacation package related costs that they would not have otherwise incurred and paid.

132.   Neither Plaintiff nor other Class Members contributed to the unlawful conduct set forth herein, nor did they contribute to Plaintiffs' making of their refund misrepresentation, nor to the insufficient policies, procedures, and measures which were omitted and led to the failure to ensure the accuracy and truthfulness of Defendants' claims in connection with the nature of their goods and services.

133.   Plaintiff and the Class Members request the Court enter an order awarding Plaintiff and the Class Members mandatory restitution and damages, and that they are entitled to recover their reasonable attorneys' fees.   Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION

### FRAUD

134.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

135.   Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendants.

136.   As set forth herein, Defendants misrepresented that customers would receive a refund if Defendants had to cancel, and at that Defendants' attractions would be accessible on the day the ticket was purchased for, and in the case of memberships, virtually every other day of the year. However, Defendants did not in fact issue refund to customers when they cancelled and closed the attractions. These misrepresentations and omissions were made with knowledge of their falsehood.

137.   The misrepresentations and omissions made by Defendants upon which Plaintiff and Class Members reasonably and justifiably relied were widely disseminated, were an integral part of the contract, and were intended to induce and actually induced Plaintiff and Class Members to purchase Defendants' tickets, memberships, and vacation packages.  Plaintiff and Class Members would not have purchased Defendants' tickets, memberships, and vacation packages, or would not have purchased these items on the same terms, if the true facts had been known. The fraudulent actions of Defendants caused damage to Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

138.   Plaintiff and the Class Members request the Court enter an order awarding Plaintiff and the Class Members mandatory restitution, actual damages, punitive and exemplary damages, and that they are entitled to recover their reasonable attorneys' fees. Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

### CONVERSION

139.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

140.   Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendants. Plaintiff also brings this claim individually and on behalf of members of the proposed California Class against Defendants.

141.   The monies paid for tickets, memberships, and vacation packages were paid directly to Defendants for Plaintiff's and each Class Members' account and benefit. As a result of Defendants' wrongful conduct, which includes their collection and receipt of monies paid by Plaintiff and the Class Members' benefit, Defendants have interfered with and converted Plaintiff's and the Class Members' ownership interest in, or right to possess, such funds.

142.   Plaintiff and Class Members are the lawful owners of the funds, and other monies deposited in accounts held by Defendants. The funds and monies held in these accounts were paid directly to Defendants and held for Plaintiff and the Class Members' account and benefit. As a result of Defendants' wrongful conduct, which includes its collection, taking, and receipt of monies, and funds paid for Plaintiff's and the Class Members' benefit, Defendants have interfered with and converted Plaintiff's and the Class Members' ownership interest in, and right to possess, such funds.

143.   The monies Defendants misappropriated are in a specific sum capable of identification.  Defendants took Plaintiff's and the Class Members' funds from their accounts and converted them to their own use. Defendants willfully interfered with Plaintiff's and the Class Members' rights to their funds  with full knowledge that that their conduct was illegal and unlawful.  Plaintiff and the Class Members have been damaged by Defendants' conversion.

144.   Plaintiff and the Class Members request the Court enter an order awarding Plaintiff and the Class Members mandatory restitution, actual damages, punitive and exemplary damages, and that they are entitled to recover their reasonable attorneys' fees. Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney

general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## NINTH CAUSE OF ACTION

### UNJUST ENRICHMENT

145.  Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

146.   Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendants. Plaintiff also brings this claim individually and on behalf of members of the proposed California Class against Defendants.

147.   "Under California law, the elements of unjust enrichment are: (a) receipt of a benefit; and (b) unjust retention of the benefit at the expense of another." *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-CV-00887-HSG, 2015 WL 4747533, at *8 (N.D. Cal. Aug. 11, 2015). *See also*, *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.")

148.   "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred "is an obligation (not a true contract [citation]) created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to her or her former position by return of the thing or its equivalent in money." *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).

149.  Plaintiff and Class Members conferred non-gratuitous benefits upon Defendants by purchasing tickets, memberships, and vacation packages, thereby significantly and materially increasing Defendants revenues, profit margins, and profits,

and unjustly enriching Defendants at the expense of and to the detriment of Plaintiff and the Class Members.

150.  Defendants' retention of any benefit collected directly and indirectly from Plaintiff's and Class Members' payments to Defendants violated principles of justice, equity, and good conscience. As a result, Defendants have been unjustly enriched. Plaintiff and Class Members are entitled to recover from Defendants all amounts that Defendants has wrongfully and improperly obtained, and Defendants should be required to disgorge to Plaintiff and Class Members the benefits they have unjustly obtained.

151.  Defendants accepted or retained such benefits with knowledge that Plaintiff's and Class Members' rights were being violated for financial gain.  Defendants have been unjustly enriched in retaining the revenues and profits from Plaintiff and Class Members' payments, which retention under these circumstances is unjust and inequitable.

152.  As a direct and proximate result of Defendants' unlawful practices and the retention of Plaintiff and the Class Members payments, Plaintiff and Class Members have suffered concrete harm and injury, including, but not limited to, monetary loss in connection with their payments made to Defendants and purchases of their good and services as alleged herein.

153.  Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members would be unjust and inequitable. Plaintiff and Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendants in a manner established by this Court.

154.  Plaintiff and the Class Members request the Court enter an order awarding Plaintiff and the Class Members restitution, damages, and that they are entitled to recover their reasonable attorneys' fees.  Plaintiff and the Class Members therefore also seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other

- 34 -

methods of awarding attorneys' fees and costs.

## VIII.  **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of herself, all others Class Members similarly situated, and the general public, prays for judgment against Defendants as to each and every cause of action, and the following remedies:

(a)      An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing her undersigned counsel as class counsel;

(b)      An Order requiring Defendants to bear the cost of class notice(s);

(c)      An Order declaring Defendants' conduct unlawful;

(d)      An Order enjoining Defendants from engaging in the unfair, unlawful, and deceptive business practices and false advertising complained of herein;

(e)      An Order compelling Defendants to conduct a corrective advertising campaign;

(f)      An Order compelling Defendants to recall and destroy all misleading and deceptive advertising materials;

(g)      An Order requiring Defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

(h)      An Order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

(i)      An Order requiring Defendants to pay all actual and statutory damages permitted under the causes of action alleged herein;

(j)      An Order requiring Defendants to pay punitive and exemplary damages permitted under the causes of action alleged herein;

(k)      An award of pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Code Civ. Proc. § 1021.5, any common law "private attorney general" equitable doctrine, any

"common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs; and

(l) Any other and further relief that Court deems necessary, just, or proper.

## IX.  JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 8, 2020            Respectfully Submitted,

_/s/ Robert Teel_____
Robert Teel

**LAW OFFICE OF ROBERT L. TEEL**
Robert Teel (SBN 127081)
_lawoffice@rlteel.com_
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Tel.: (866) 833-5529 / Fax: (855) 609-6911

**LAW OFFICES OF RONALD A. MARRON, APLC**
Ronald A. Marron (SBN 175650)
_ron@consumersadvocates.com_
Michael T. Houchin (SBN 305541)
_mike@consumersadvocates.com_
651 Arroyo Drive
San Diego, CA 92103
Tel.: (619) 696-9006  / Fax: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***