1
2
3
4
5
6
7           UNITED STATES DISTRICT COURT
8         SOUTHERN DISTRICT OF CALIFORNIA
9

10   WILLIAM LUM, et. al,                      Consolidated Case No.:
                                               20cv01049 JAH-MSB
11                            Plaintiffs,
                                               **ORDER GRANTING IN PART AND**
12   v.                                        **DENYING IN PART DEFENDANTS'**
                                               **MOTION TO DISMISS [Doc. No. 38]**
13   MERLIN ENTERTAINMENTS GROUP
     U.S. HOLDINGS INC, et. al,
14
                              Defendants.
15

16

17        Pending before the Court is Defendants' motion to dismiss Plaintiffs' consolidated

18   complaint ("CC") in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and

19   12(b)(6).[1]  Plaintiffs filed an opposition and Defendants filed a reply.  After a review of the

20   parties' submissions and for the reasons discussed below, the Court GRANTS IN PART

21   AND DENIES IN PART Defendants' motion.

22                            **BACKGROUND**

23        Following this Court's order granting Plaintiffs' motion to consolidate and related

24   plaintiff's motion to appoint interim counsel, counsel filed a consolidated complaint

25

26   _____

27   [1] In support of their motion, Defendants seek judicial notice of numerous documents.  Because the Court
     did not consider the documents in making its determination on Defendant's motion to dismiss, the Court
28   denies the request as moot.

                                         1

asserting claims for violation of California Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et. seq.*, false advertising ("FAL"), California Business and Professions Code section 17500, *et. seq.*, unfair competition ("UCL"), California Business and Professions Code section 17200, *et. seq.*, breach of contract, money had and received, fraud, conversion and unjust enrichment.  Plaintiffs name Legoland California, LLC (hereinafter, "Legoland"), Merlin Entertainments Short Breaks LLC (hereinafter, "Short Breaks"), doing business as Legoland Vacations, Madame Tussauds Hollywood, LLC, Madame Tussauds San Francisco LLC, San Francisco Dungeon LLC, and Legoland Discovery Center San Jose LLC as defendants.  Plaintiffs allege Defendants wrongly retained and converted customer funds when they closed their attractions and refused to refund ticketholders their money.

## DISCUSSION

Defendants argue Plaintiff's complaint should be dismissed in its entirety because Plaintiffs lack standing under Federal Rule of Civil Procedure 12(b)(1).  Even if they sufficiently allege standing, Defendants argue Plaintiffs fail to state a claim for breach of contract, the money had and received and unjust enrichment claims should be dismissed because they are based on the same allegations as their contract claim, their fraud based claims fail to meet the standard of Federal Rule of Civil Procedure 9(b), Plaintiffs cannot represent a nationwide class and Plaintiffs do not allege inadequate remedies at law to support the equitable claims.

## I.  Legal Standards

### A.  12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter.  The federal court is one of limited jurisdiction.  *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986)  As such, it cannot reach the merits of any dispute until it confirms its

20cv01049 JAH-MSB

own subject matter jurisdiction.  *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

**B.  12(b)(6)**

Rule 12(b)(6) tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory.  *Robertson*, 749 F.2d at 534.  While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level".  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).  A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  "Determining whether a complaint states a plausible claim for relief will

... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested and matters of which the Court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## II.  Analysis

## A.  Standing

Defendants contend Plaintiffs lack Article III and statutory standing. A federal court's judicial power is limited to "cases" or "controversies". U.S. Const., Art. III § 2. A necessary element of Article III's "case" or "controversy" requirement is that a litigant must have "'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1152 (9th Cir. 2000). The "irreducible constitutional minimum" of Article III standing has three elements. *LSO*, 205 F.3d at 1152. First, the plaintiff must have suffered "an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and

imminent, not conjectural or hypothetical". *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Second, the plaintiff must show a causal connection between the injury and the conduct complained of; i.e., "the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id*. (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)) (alterations in original).  Third, it must be "likely," and not merely "speculative," that the plaintiff's injury will be redressed by a favorable decision. *Id*. at 561.

Similarly, those bringing claims for false advertising and unfair competition under California law must have suffered an injury and lost money or property as a result of the defendant's conduct.  Cal. Bus. & Prof. Code §§ 17204, 17535; *see Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 321 (2011).  Additionally, an individual bringing a claim under the CLRA must both be exposed to an unlawful practice and suffer damage as a result.  *Meyer v. Sprint Spectrum LP.*, 45 Cal.4th 634, 641 (2009).

## 1.  Facial Versus Factual Challenge

Defendants contend they make both a facial and factual challenge to jurisdiction.  A facial attack requires the court to consider the allegations of the complaint to be true and determine whether they establish subject matter jurisdiction.  *Savage v. Glendale High Union Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).  A factual challenge attacks the existence of subject matter jurisdiction and no presumption of truthfulness attaches to the allegations of the complaint.  *Thornbill Publishing Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1973).   Defendants argue Plaintiffs fail to allege they made purchases from any Defendant other than Legoland California and Short Breaks to support an injury traceable to the remaining Defendants.  They also argue Plaintiffs got what they paid for and, therefore, suffered no cognizable injury.

Plaintiffs argue Defendants' standing challenge is only a facial challenge subject to the Rule 12(b)(6) standard because Defendants do not cite to any extrinsic evidence.   In

5

response, Defendants contend Plaintiffs overlook their cites to the terms of the tickets/passes purchased.

A review of the motion demonstrates Defendants cite to language from tickets and passes that are referenced in the consolidated complaint. Defendants also include an affidavit from Kurt Stocks, Divisional Director and General Manager of Legoland California and President and a manager of Short Breaks in support of their motion. Nevertheless, Defendants factual challenge is dependent on the merits of the case. Defendants contend Plaintiffs received what they paid for because their tickets were not canceled and remain valid and, therefore, they suffered no injury. Additionally, they contend the tickets indicate they are non-refundable and availability is subject to change, facts Plaintiffs knew at the time they purchased the tickets, and the standard terms explain Legoland has the right to alter or close or remove exhibits and no refunds are given in those circumstances.

Whether Plaintiffs received what they paid for is closely intertwined with the merits of Plaintiffs' claims. Plaintiffs allege Defendants misleadingly advertised that customers would have access to Defendants' attractions upon purchasing tickets or passes or receive a refund pursuant to the Cancellation Promise included in their tickets and passes but failed to refund money when the attractions were closed in response to COVID-19. Because Plaintiffs assert they did not receive a refund, they dispute Defendants' contention they got what they paid for and suffered no injury. Accordingly, dismissal is not proper based on the factual challenge. *See Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1094 (9th Cir. 2008) (Determining that, generally, dismissal is improper when the question of jurisdiction and the merits of the action are intertwined.).

**2. Facial Challenge**

Defendants maintain Plaintiffs allege direct purchases only from Legoland California and Short Breaks and, therefore, Plaintiffs cannot trace an injury to the

remaining defendants.  Defendants argue the claims against the defendants from which no named plaintiff has alleged a purchase fail to establish standing and Plaintiffs cannot manufacture standing through group pleadings.

Plaintiffs argue their broad allegations of all Defendants' involvement sufficiently demonstrates standing because the other Defendants' conduct is substantially similar. Specifically, Plaintiffs argue they allege the Nationwide Class and California Class concern substantially similar products to those purchased by Plaintiffs William Lum, Tiffany Lamar and Jessica Bautista because all products were sold in California and included the cancellation promise, and Defendants' practices and misrepresentations regarding the products purchased by Plaintiffs are substantially similar to the other products to adequately convey standing at this stage.  Plaintiffs further argue they allege Defendants were acting within the scope of a common enterprise, dominated and controlled each other's acts and practices, and knew and approved of each other's acts and practices from which they benefitted.

In reply, Defendants argue the substantially similar analysis is inapplicable because Plaintiffs bring claims against entities from whom they made purchases and separate entities from whom they made no purchases.  They maintain the substantially similar analysis applies to instances where a single entity sells multiple products and the named plaintiffs purchased at least one product.

"In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*).  The consolidated complaint alleges Plaintiffs Lum, Lamar and Bautista purchased tickets, passes and/or stays for visits to Legoland and suffered an injury when Legoland and Short Breaks failed to refund monies paid.  CC ¶¶ 21-23, 45-52, 59-62, 65-81.  There are no allegations that any of the named plaintiffs made any purchase from Defendants Madam Tussauds Hollywood, Madam Tussauds San Francisco, San Francisco Dungeon, or Legoland Discovery Center San Jose.  "[I]f none of the named plaintiffs purporting to

7

represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Plaintiffs suggest they adequately allege facts to support standing at this stage against the defendants from whom they made no purchases because they suffered an injury as a result of Defendant Legoland's substantially similar acts concerning a substantially similar product. They invite the Court to determine a named plaintiff who purchased a substantially similar product from a different defendant who engaged in similar conduct to the defendant who caused the unnamed class members' injury may seek relief on behalf of those unnamed class members. This is inconsistent with standing requirements that, at a minimum, require the plaintiff suffered an injury as a result of the defendant's conduct. To properly support standing, Plaintiffs must allege "they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). That a suit may be a class action. . .adds nothing to the question of standing." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 40 n. 20 (1976). Plaintiffs rely on district court cases which hold a plaintiff who purchases a different but substantially similar product from the same defendant has standing to bring claims on behalf of class members who purchased the similar product.[2] This Court declines the invitation to extend the reasoning of those decisions to this action which involves different products from different defendants. Plaintiffs' allegations of purchases of similar products from Defendants Legoland and Short Breaks do not establish standing against Defendants Madam Tussauds Hollywood, Madam Tussauds San Francisco, San Francisco Dungeon, or Legoland Discovery Center San Jose from whom they made no purchases.

---

[2] *Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861, 869 (N.D.Cal.2012); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1228 (N.D. Cal. 2014).

Additionally, Plaintiffs' allegations that all Defendants controlled each other and approved of each Defendant's acts are insufficient to support standing.  Accordingly, the claims against Defendants Madam Tussauds Hollywood, Madam Tussauds San Francisco, San Francisco Dungeon, or Legoland Discovery Center San Jose are dismissed for lack of standing.

**B. Failure to State a Claim**

**1. Breach of Contract**

Defendants argue they did not breach any obligation to provide access.  They maintain it was impossible for them to honor Plaintiffs' tickets and hotel reservations on the days for which they were originally purchased because state and county government orders prohibited them from operating on those days and any purported obligation to provide access was suspended.  Additionally, they contend they never promised unqualified access as evidenced by the disclosures in the pass terms regarding blackout dates, benefits, hours, events, prices, and the statement that days of operation are subject to change without notice and they reserved the right to alter, close or remove details/exhibits without prior notice and that no refunds can be given.

Defendants also argue, assuming they had an obligation to provide access that was not suspended, there was no breach of an obligation to provide refunds because there was no cancellation and the terms and conditions of the passes and tickets state all sales are nonrefundable.  They maintain the Cancellation Promise upon which Plaintiffs rely does not apply because it only covers cancellation by Legoland and Legoland did not cancel but, instead, was forced to temporarily shut down by government orders.  They argue Plaintiffs improperly conflate "cancellation" with "temporary closure".  Additionally, Defendants contend Plaintiffs have no contract damages because they retain valid purchases.

Plaintiffs contend Defendants' argument that their actions do not amount to a cancellation is a factual inquiry inappropriate for decision at this time.  They argue Defendants look to various other language included within their terms of use that directly

contradict the language of the Cancellation Promise and the ambiguity should be resolved against the Defendants.  They maintain such determination is more appropriately handled at a later stage of the proceedings.

Plaintiffs also argue the affirmative defense of impossibility is inappropriate at this stage due to the high factual burden and is also contradicted by the Cancellation Promise. They contend the Cancellation Promise, which states that if Defendants have to make any significant changes or cancellations, Defendants will provide the option of a refund, addressed the situation caused by COVID-19.  Additionally, they argue, while they may retain tickets, they have been deprived of the cash refund to which they are entitled under the Cancellation Promise which constitutes damages arising out of Defendants' breach.

In reply, Defendants argue Plaintiffs fail to allege a contractual right to a refund because there is no ambiguity between the no-refund provisions and the Cancellation Promise.

To state a claim for breach of contract, a plaintiff must allege "(1) existence of the contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008).  In the consolidated complaint, Plaintiffs allege they entered into written standardized agreements with Defendants in which Defendants agreed to provide Plaintiffs access to their attractions and each class member performed their obligations under the contract.  CC ¶ 174.   They further allege the contract provides "if Defendants have to cancel, they will offer their customers the choice of cancelling (or accepting Defendants' cancellation) in which case Defendants promise their customers a full refund of all monies paid."  CC ¶ 32.  They similarly allege that under the terms and conditions of their standardized uniform agreements, if Defendants cancel or are "unable to perform their obligations", they must accept customer cancellations and refund all monies paid by the customer.  CC ¶ 8, 28, 94.  Plaintiffs also allege Governor Gavin Newsom issued a stay-at-home order in response to COVID-19, requiring Californians to

stay in their place of residence and prohibiting large gatherings.  CC ¶ 46.  Despite the fact the Legoland California park first closed as a result of COVID-19 on or about March 16, 2020 and remained closed until April 15, 2021, Plaintiffs allege, Defendants refused to perform their obligation under the contract to refund any of the amount customers paid for passes or tickets.  CC ¶¶ 31, 175.

The parties dispute the meaning of the contract terms.  Specifically, they disagree as to whether the Cancellation Promise was triggered by the temporary closure due to the stay-at-home order.  When the contract language is clear and unambiguous, a court may resolve a contract claim on a motion to dismiss.  *See Ticor Title Insurance Co. v. Employers Ins. of Wausau*, 40 Cal.App.4th 1699, 1707 (1995); *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986).  "A contract or a provision of a contract is ambiguous if it is reasonably susceptible of more than one construction or interpretation."  *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981).

The pertinent language of the Cancellation Promise reads:

> If we have to make a significant change or cancel, we will tell you as soon as possible. If there is time to do so before departure, we will offer you the choice of the following options:
> (a) accepting the changed arrangements or
> (b) purchasing an alternative ticket offer.
> (c) cancelling or accepting the cancellation in which case you will receive a full refund of all monies you have paid to us.

CC, Exh. C.  Defendants contend the temporary closure was not a cancellation by Legoland and therefore, the Cancellation Promise was not triggered.  They maintain other provisions of the standardized agreement which discuss their right to "to alter, close or remove details/exhibits without prior notice for technical, operational or other reasons and that no refunds can be given" and "the right to refuse entry without explanation" support their argument.  CC, Ex. C, Exh. B.  Looking to the language of the contract and the circumstances of the case, it is unclear whether the parties intended a temporary closure caused by a government stay-at-home order would trigger the Cancellation Promise.  *Bank of West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992) ("Language in a contract must be

interpreted as a whole and in the circumstances of the case.").   Therefore, the contract language is ambiguous and not properly addressed in a motion to dismiss.  *See Consul Ltd. v.* 802 F.2d at 1149 (Concluding that dismissal was improper because the language of a contract left doubt as to the parties' intent.).  Additionally, the Court finds the ambiguity of the Cancellation Provision demonstrates the defense of impossibility here involves factual issues not properly addressed in a motion to dismiss.  Accordingly, the motion to dismiss the breach of contract claim is DENIED.

**2.  Quasi-Contract Claims**

Defendants contend Plaintiffs improperly recast their contract claim as unjust enrichment/quasi-contract and money had and received claims.  Because Plaintiffs' quasi-contractual claims are based on the same allegations and subject matter as their contract claim and the existence of a contract defeats quasi-contract/unjust enrichment claims, Defendants argue, the claims must be dismissed.

Plaintiffs may plead claims for unjust enrichment and money had and received in the alternative.  *See Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015).

**3.  Fraud Based Claims**

Defendants argue Plaintiffs' CLRA, UCL, FAL, negligent misrepresentation, intentional misrepresentation and unjust enrichment are subject to Rule 9(b)'s heightened pleading standard because they are grounded in fraud.  They contend the claims should be dismissed because Plaintiffs Bautista and Lum fail to allege reliance on the cancellation term, a reasonable consumer would not be deceived, and Plaintiffs fail to allege Defendants' knowledge of the purported false statements or a duty to disclose.  Plaintiffs argue they allege some non-fraudulent conduct to support their claims that is not subject to the heightened pleading standard of Rule 9(b).  Even if all the claims were entirely grounded in fraud, Plaintiffs argue they plead the claims with sufficient particularity.  Additionally, they argue, intent and knowledge may be alleged generally.

Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."  *Id*.  Under Ninth Circuit case law, Rule 9(b) imposes two distinct requirements on complaints alleging fraud.  First, the basic notice requirements of Rule 9(b) require complaints pleading fraud to set forth "the who, what, when, where, and how" of the misconduct charged.  *Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  Second, the rule requires that the complaint "set forth an explanation as to why the statement or omission complained of was false and misleading."  *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999).

Plaintiffs contend they allege Defendants engaged in some non-fraudulent conduct and, therefore, they are not required to plead the entirety of their claims in accordance with Rule 9(b).  However, Plaintiffs do not specify or describe Defendants' allegedly non-fraudulent conduct but, instead, generally cite to paragraphs in the complaint that purportedly demonstrate they allege Defendants' CLRA violations in the disjunctive.  The allegations of the consolidated complaint describe Defendants' alleged misrepresentation regarding access to the amusement park through the tickets/passes, vacation packages and hotel reservations purchased by class members and Defendants' failure to refund monies paid by the class members when the parks were closed due to COVID-19.  Defendants' conduct is described in the first several sections of the consolidated complaint and the sections addressing the specific causes of action upon which Plaintiffs seek relief "reallege and incorporate" the previous allegations.  Plaintiffs' allegations describe a "unified course of fraudulent conduct" upon which all their claims rely.  *Vess*, 317 F.3d at 110-04.  As such, Plaintiffs' claims are grounded in fraud and Rule 9(b) applies.

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**a. Reliance**

Defendants contend Plaintiffs Bautista's and Lum's claims fail at the threshold because they do not allege reliance on any allegedly misleading term.  Claims brought under the UCL, FAL, and CLRA all require a showing of actual reliance on the allegedly deceptive or misleading statements.  *See Kwikset Corp.*, 51 Cal.4th at 326-27; *Cohen v. DirecTV, Inc.*, 178 Cal.App.4th 966 (2009).   Similarly, claims for negligent misrepresentation and intentional misrepresentation require a showing of actual reliance. *Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.*, 196 Ca.App.4th 1559, 1573 (2011); *Chapman v Skype Inc.*, 220 Cal.App.4th 217, 230 (2013).  Defendants contend Bautista fails to allege viewing the cancellation term or any advertisement pre-purchase. They also contend Lum similarly fails to allege he relied on the cancellation term or even read it prior to purchasing his annual pass.  Plaintiffs maintain the Cancellation Promise is not the sole representation or omission that caused them harm and they sufficiently allege Bautista and Lum actually relied on Defendants' deceptive and misleading statements.

The consolidated complaint includes general allegations that Plaintiffs believed the attractions   and   hotels   would   be   open   for   the   dates   purchase,   Defendants' misrepresentations and omissions that the attractions and hotels would be accessible, and if not, they would receive a refund, Defendants' promises regarding "the characteristics, benefits, or quantities" of the tickets, memberships and vacation packages and that Defendants later misrepresented that the tickets were non-refundable.  *See* CC ¶¶ 123-125, 139, 141, 162.  Plaintiffs also allege Bautista paid Defendants under the impression Legoland would provide refunds if the attraction was closed.  CC ¶ 55.  Plaintiffs allege Lum learned Defendants misrepresented and concealed the fact his purchase was refundable.   CC  ¶  62.   They  further  allege  they  reasonably  relied  on  Defendants' Cancellation Promise and they "reasonably and justifiably relied" on Defendant's widely disseminated misrepresentations and omissions that were an integral part of the contract

and intended to induce Plaintiffs and the class members to purchase the tickets and reservations.  CC ¶¶ 208, 209.

While Plaintiffs argue Defendants made representations other than those regarding the Cancellation Promise, the only specific representation pled in the complaint is the Cancellation Promise.  Plaintiffs fail to allege with adequate specificity that Bautista or Lum viewed and relied upon the misrepresentation when making their purchase.

**b.  Reasonable Consumer**

Defendants argue that a reasonable consumer would not be misled into believing that a statement regarding cancellations would permit a refund for tickets or hotel reservations. Even if Plaintiffs' subjective desire for a refund is a reasonable baseline expectation, Defendants argue, the statement that the tickets are non-refundable dispels that expectation. They also argue Plaintiffs' assertion that Defendants offered unlimited access to Legoland or exclusively on the dates and at the time customers chose invents a misrepresentation.

Plaintiffs argue a reasonable consumer would be deceived into believing that they would be entitled to a refund for their hotel reservations, vacation packages, tickets or related goods or services during Defendants' indefinite closure.  Plaintiffs further argue whether reasonable consumers would be misled is a question of fact for the jury.

Plaintiffs' claims are subject to the "reasonable consumer" test.  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Under the "reasonable consumer" test, a plaintiff must "show that 'members of the public are likely to be deceived'."  *Id.* (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  The standard requires a possibility that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).  Under the reasonable consumer test, the Ninth Circuit has emphasized that it is a "rare situation in which granting a motion to dismiss is appropriate" because "it raises questions of fact."  *Reid v. Johnson & Johnson*, 780 F.3d

952, 958 (9th Cir. 2015).  The Court agrees that whether a reasonable consumer would be deceived in this matter is a question of fact appropriate for the jury.

**c. Knowledge**

Defendants argue Plaintiffs fail to allege facts showing the element of knowledge of falsity by Defendants at the time of their purchases as required for both misrepresentations and omissions.  Defendants maintain Plaintiffs make nonsensical allegations that Defendants anticipated and should have told them about COVID-19, the resulting global pandemic, and government orders requiring their closure when they allege Defendants induced Plaintiffs to purchase tickets knowing the attractions would not be accessible and planned to break the cancellation promise.

Plaintiffs argue Defendants only address half of the analysis by asserting Plaintiffs were required to allege knowledge of falsity and maintain they allege actionable omissions by Defendants.  They maintain Defendants represented to Plaintiffs that their tickets and hotel reservations were refundable, only to turn around and assert the exact opposite as the basis for denying refunds and Plaintiffs allege Defendants knew or should have known that these misrepresentations were false at the time they were made.  Plaintiffs contend Defendants misconstrue their claims in arguing that the omission is based on the fact that Defendants anticipated COVID-19.  Instead, Plaintiffs argue, they allege that after Defendants closed Legoland, they failed to inform consumers they would not be open during the agreed upon dates and that they would not be providing refunds and would continue to charge customers, despite previous representations that the tickets and hotels reservations were refundable.  They maintain Defendants had a duty to disclose the tickets and hotel reservations were refundable.

Defendants argue there are no actionable omissions and Plaintiffs attempt to recast their misrepresentation theory as one of omission.  Defendants contend that Plaintiff's omissions argument conflicts with the allegations in the consolidated complaint and with the standard terms attached which disclose no refunds will be given.  Additionally,

Defendants argue failure to disclose information after Plaintiffs' purchases are arguably, at best, post-sale omissions which do not establish causation and are not actionable.

As currently pled, the consolidated complaint only alleges misrepresentations by Defendants. Plaintiffs allege Defendants knew their advertising of their attractions as being accessible or customers would receive a refund were misleading and inaccurate and never intended to refund any monies paid. CC ¶¶ 140, 142, 165, 206. The Court finds Plaintiffs' argument that Defendants had a duty to disclose the tickets and reservations were refundable mischaracterizes the alleged misrepresentations regarding the refundable nature of their purchases as omissions. Pursuant to Rule 9(b), Plaintiffs need only plead Defendants' knowledge generally through non-conclusory, plausible allegations. Plaintiffs' conclusory allegations that Defendants knew their statements that the attractions would be accessible or customer would receive a refund were inaccurate and misleading are insufficient.

Plaintiffs fail to allege reliance and knowledge with the required specificity to support their CLRA, UCL, FAL, negligent misrepresentation and intentional misrepresentation claims.

**4. UCL**

Defendants argue Plaintiffs fail to state a claim under any prong of the UCL.

**a. Unlawful Prong**

Defendants argue Plaintiffs' claims under the "unlawful" prong rely solely on predicate violations of the FAL and CLRA and, therefore, fail to the same extent the FAL and CLRA claims fail. Plaintiffs contend they properly allege violations of the FAL and CLRA and, therefore, they properly allege claims brought under the "unlawful" prong of the UCL. Because the Court finds Plaintiffs' FAL and CLRA are subject to dismissal as discussed above, there are no unlawful acts upon which to base the "unlawful" UCL claims. *See Ingel v. Westwood One Broadcasting Servs., Inc.*, 129 Cal.App.4th 1050, 1060 (2005). Accordingly, Plaintiffs' claims under the "unlawful" prong fail.

**b. Fraudulent Prong**

Defendants argue Plaintiffs' claims under the "fraudulent" prong fail because Bautista and Lum do not plead reliance on the Cancellation Promise, Plaintiffs do not plausibly allege Defendants' knowledge of falsity or duty to disclose a material fact, no reasonable consumer would be deceived by the Cancellation Promise, the Cancellation Promise was not broken, and Plaintiffs can reschedule their tickets and hotel packages such that Plaintiffs were not harmed.   Plaintiffs assert they allege valid claims under the "fraudulent" prong of the UCL because: (1) Plaintiffs adequately allege reliance; (2) Plaintiffs validly assert actionable omissions by Defendants; (3) a reasonable consumer would be deceived by Defendants' representations and omissions; and (4) Plaintiffs properly assert they were harmed.   As discussed in detail above, Plaintiffs fail to sufficiently allege reliance and knowledge of falsity to support their claims.

**c. Unfair Prong**

Defendants argue the claims under the "unfair" prong fail because Plaintiffs do not explain why Defendants' alleged conduct is unfair or how it is immoral.   Defendants maintain they had a valid reason to close their attractions and hotels during the pandemic and offer to reschedule Plaintiffs' vacation.   Therefore, they argue, their conduct was neither unfair nor immoral.   Additionally, they argue Plaintiffs' alleged breach of contract theory is insufficient to support a claim under the UCL's unfair prong.

Plaintiffs argue, as a preliminary matter, whether the utility of Defendants' conduct outweighed the harm to Plaintiffs is a premature factual question inappropriate for determination at this stage of the proceedings.   They contend they specifically allege Defendants' conduct of advertising and the Cancellation Promise that would refund monies paid if they had to cancel, and refusal to refund monies paid and charging of membership fees while their attractions were closed is unfair.

Plaintiffs point to a single conclusory allegation that Defendants' conduct violated public policy "as declared by specific statutory or regulatory provisions, including but not

limited to the FAL and CLRA." Plas' Opp. at 15 (citing CC ¶ 160). Plaintiffs fail to sufficiently set forth allegations to support a claim under the "unfair" prong.

**6. CLRA Claim**

Defendants argue Plaintiffs' CLRA claim fails because Plaintiffs' purchases are not goods or services, and Plaintiffs fail to plausibly allege that the terms are unconscionable under California Civil Code section 1770(19).

**a. Goods or Services**

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices. . .undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer. . ." Cal. Civ. Code ¶ 1770(a). Under the CLRA, "goods" are defined as "tangible chattels bought or leased for use primarily for personal, family, or household purposes. . ." Cal. Civ. Code § 1761(a). Services are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b).

Defendants argue neither a hotel reservation nor a ticket to Legoland is a tangible chattel and contend California federal district courts and the California Court of Appeal have held that vacation credits, like a hotel reservation, do not fall within the CLRA's definition of goods or services. Plaintiffs argue their purchases are properly characterized as a good or service within the meaning of the CLRA. They contend they had the ability to go to a brick-and-mortar store to pick up the tickets and the tickets were intended for admittance to the amusement park that exists in a tangible space. Because the tickets can be touched, Plaintiffs contend they are tangible chattel. Alternatively, they contend the tickets are a service. They further argue a hotel reservation is not a timeshare or timeshare points.

Plaintiff compares the tickets purchased to the video game disc purchased in *Ladore v. Sony Computer Entertainment America, LLC*, 75 F.Supp.3d 1065 (N.D.Cal. 2015). The

19

court, in *Ladore*, found the disc purchased at a brick-and-mortar store which came in a physical medium was a good as defined by the CLRA.  *Id*.  Unlike the game disc, the ticket here is the 'physical representation' of an agreement for something intangible", access to Legoland.  *See Kissling v. Wyndham Vacation Resorts, Inc.*, 2015 WL 7283038, *4 (N.D.Cal. 2015).  As such, the tickets for entry are not goods for purposes of the CLRA.

Relying on *Hall v. Sea World Entertainment Inc.*, 2015 WL 9659911 *15 (S.D.Cal. December 23, 2015), Defendant argues a ticket for entrance to an amusement park is not a service under the CLRA.  The court in *Hall* reasoned that holding a ticket for admission to a park is a service "requires a strained and unnatural construction of the term" and dismissed the plaintiff's CLRA claims with prejudice.  Plaintiff invites the Court to follow *Anderson v. Seaworld Parks & Entm't, Inc.*, 2016 WL 8929295, (N.D. Cal. Nov. 7, 2016) that determined educational and entertainment services fall within the CLRA's definition of services.  Noting that a court is required to "apply California law as it believes the California Supreme Court would apply it", the court in *Anderson* looked to the language of the statute and legislative history and determined the term "services" in the CLRA encompasses "educational and entertainment" services provided by the defendant.  *Id*. at *10.[3]  This Court is persuaded by the reasoning in *Anderson* that the entertainment services provided by Defendant Legoland are services as defined by the CLRA.

Defendant argues a hotel reservation is a temporary interest in real property like timeshare points and relies on *Kissling v. Wyndham Vacation Resorts, Inc.*, 2015 WL 7283038 (N.D. Cal. November 28, 2015) in support of its argument that the right to use a facility for a specific amount of time is not a service.  The court in *Kissling* reasoned that "the core value of the timeshare points is the interest in and use of real estate" not the services incident thereto.  *Id*. at *5.  Plaintiff argues that a hotel reservation is not a

---

[3] Defendants contend Plaintiff cite to *Anderson* is improper because it is labeled "not for publication." There is no local rule in this district preventing a court from relying on a court order designated "not for publication" by the Northern District of California.

timeshare nor timeshare points.  Construing and applying the statute liberally to promote its underlying purpose as required, the Court finds hotel accommodations are services under the CLRA.  *See* Cal. Civ. Code §1760.  *Hall v. Marriott Int'l, Inc.*, 2020 WL 4727069, at *13 (S.D. Cal. Aug. 14, 2020).

**b. Unconscionable**

Under the CLRA, inserting an unconscionable provision in a contract "undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer" is unlawful.  Ca. Civ. Code § 1770(a)(19).  Unconscionability has a procedural element and a substantive element and both must be present to invalidate the contract or clause.  *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000).  However, they do not need to be present to the same degree.  *Id*.  Instead, they are measured on a sliding scale so, the more substantively oppressive, the less procedural unconscionability is required.  *Id*.  Procedural unconscionability involves the parties' bargaining strength and whether a provision is hidden or unexpected, while substantive unconscionability "requires terms that 'shock the conscience' or at the least may be described as 'harsh or oppressive'."  *Woodside Homes of Cal., Inc. v. Superior Ct.*, 107 Cal. App. 4th 723, 727 (2003) (quoting *24 Hour Fitness, Inc. v. Superior Court* 66 Cal.App.4th 1199 (1998)).

Defendants argue Plaintiffs fail to allege how the "no refund" terms are substantively or procedurally unconscionable.  Defendants contend Plaintiffs merely conclude the "no refund" terms are unconscionable without any supporting facts.  They maintain Plaintiffs' complaint describes routine online purchase that were not forced on them and include standard terms.  They further contend Plaintiffs' suggestion that the "no refund" policy is unfair given COVID-19 fails because unconscionability is determined at the time of purchase.  Additionally, they argue Plaintiffs' position that "no refund" terms are substantively unconscionable is at odds with the law.

Plaintiffs argue the "no refund" provision in the reservation confirmation documents is substantively unconscionable to the extent it permits Defendants to not refund Plaintiffs' monies yet fail to provide the goods and services during an extended closure of the hotel and park.  They further argue it is procedurally unconscionable because the "no refund" language was added after the fact in a reservation confirmation when Plaintiff had no bargaining power.  Plaintiffs maintain there is no contract language that allocates 100% of the risk of an extended closure due to a pandemic to Plaintiffs.

In reply, Defendants argue the allegations of the complaint and judicially noticeable terms demonstrate the "no refund" language was not added after the fact.  Additionally, they argue Plaintiffs do not cite a case to support their proposition that a "no refund" policy is unconscionable, and courts have found the opposite.  Defendants also argue that, contrary to Plaintiffs' contention, the "non-refundable" disclaimers in all the terms allocated 100% of the risk of closure to Plaintiffs.  They maintain Plaintiffs were also free to make refundable purchases with "Flexible Cancellation," but did not.

Plaintiffs allege the "no refund" policy as applied to the closures is unconscionable. CC ¶ 122.   However, the critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties—not whether it is unconscionable in light of subsequent events." *American Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996).  Accordingly, the closure of Legoland and the hotels due to the stay-at-home order issued due to COVID-19 which occurred subsequent to parties entering the contracts is not relevant to the inquiry.

While Plaintiffs now argue the "no refund" language was added after they entered into the contract when they received their confirmation, the complaint contains no such allegations.   As such they fail to allege the contract provision was procedurally unconscionable.   Additionally, Plaintiffs fail to meet the substantive element of unconscionability in that the contract involves the use of entertainment services.  *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007) (citing

*Olsen v. Breeze, Inc.*, 48 Cal.App.4th 608 (1996) "[W]hen the challenged term is in a contract concerning a nonessential recreational activity, the consumer always has the option of simply forgoing the activity.").

## 7. Economic Loss Rule

Defendants argue the economic loss rule bars Plaintiffs' conversion, negligent misrepresentation, and intentional misrepresentation claims. "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). A distinction is drawn between commercial transactions involving the sale of goods protected by contract law and actions involving injury resulting from a defective product generally remedied by tort law. *Id.* If the claim asserts loss of the benefit of the bargain, the claim "belongs in the realm of contract law which deals with 'the vindication of economic expectations'." *Transwestern Pipline Co. v. Monsanto Co.*, 46 Cal.App.4th 502, 529-530 (1996) (quoting *Truck Components, Inc. v. K-H Corp.*, 1995 WL 692541 (N.D. Ill. 1995)).

Defendants argue, Plaintiffs merely repeat the allegations underlying their contract claims and do not allege any unique harm beyond an allegedly broken agreement to a refund if Defendants cancel. Plaintiffs argue, in addition to the refund, they seek reasonable legal interest from Defendants during the time Defendants held onto Plaintiffs' and the putative class members' money during the closure. They contend, as such, Defendants committed an affirmative and independent act of converting the monies to their own business use during the closures which, Plaintiffs argue, is an omission of an independent duty not entirely based on the breach of contract allegations. Additionally, Plaintiffs argue there is an exception that allows for tort damages on contracts that were fraudulently induced and they allege Defendants made intentional misrepresentations or omissions to induce the Plaintiffs and class members to make the purchases. Plaintiffs also argue it is premature to decide this at the pleading stage.

In reply, Defendants argue the claim for interest does not circumvent the economic loss rule and contend Plaintiffs cite no law in support of their argument.  Additionally, Defendants contend Plaintiffs' theory that the use of the monies was an omission of an independent duty from the principles of tort law is conclusory and unintelligible. Defendants also argue the fraudulent inducement exception does not apply because Plaintiffs do not allege damages independent of their economic loss.

Plaintiffs suggest their prayer for legal interest from the monies paid by Plaintiffs alleges Defendants converted the monies for their own use and they contend this demonstrates an omission of an independent duty.  Plaintiffs fail to demonstrate that the interest from the monies they paid as part of the contract is an injury outside the bargain and they cite to no authority in support.

According to Plaintiffs' allegations, Defendants misrepresented that customers would receive a refund if Defendants had to cancel, and that Defendants' attractions would be accessible but did not refund customers' monies when they cancelled and closed the attractions. CC ¶ 205.  Plaintiffs fail to allege damages independent of their economic losses.  *See Robinson Helicopter,* 34 Cal. 4th at 993.  However, "tort damages have been permitted in contract cases. . .where the contract was fraudulently induced."  *Erlich v. Menezes*, 21 Cal. 4th 543, 552, 981 P.2d 978, 983 (1999); *see also Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 78 (1993) ("[W]hen one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort.").

The economic loss rule does not bar the misrepresentation claims under the fraudulent inducement exception.  Plaintiffs' conversion claim, as currently pled, fails to assert damages beyond the contract.

**8. Conversion**

Defendants argue Plaintiffs fail to state a claim for conversion because they allege no credible allegations of theft or misappropriation or commingling of funds as required. They maintain a conversion claim cannot be premised on a previously authorized charge.

Plaintiffs argue their allegations that Defendants' chose to hold onto thousands of dollars paid by Plaintiffs for goods and services they failed to provide after closing their hotels and theme parks for an extended period of time sufficiently alleges Defendants unfairly and intentionally misappropriated Plaintiffs' monies for their own business use.  In reply, Defendants argue the simple failure to pay money owed does not constitute conversion.

To state a claim for conversion under California law, a plaintiff must allege facts showing "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages".  *Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 543–44 (1996).  In support of their claim for conversion, Plaintiffs allege "[t]he monies paid for hotel reservations, vacation packages, tickets, or related goods or services. . .were paid directly to Defendants for Plaintiffs' and each Class Members' account and benefit" and "Defendants have interfered with and converted Plaintiffs' and the Class Members' ownership interest in, or right to possess, such funds."  CAC ¶ 213.  They further allege Plaintiffs are the lawful owners of the funds, Defendants took the funds from Plaintiff's accounts and converted them to their own use and did so willfully with knowledge their conduct was illegal and unlawful.  *Id*. ¶¶ 214 - 216.  In addition, they allege they suffered damage as a result of the conversion.  *Id*. ¶ 217.

Plaintiffs' allegations in support of their claim for conversion assert Defendant failed to refund the monies they paid when the parks were closed.  "[A] mere contractual right of payment, without more, will not suffice."  *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997).  Accordingly, Plaintiffs fail to allege a claim for conversion.

## C.  Represent a Nationwide Class

Defendants contend the claims for breach of contract, money had and received and negligent misrepresentation, intentional misrepresentation, conversion and unjust enrichment are inadequately pled because they fail to identify which state law governs the claims.  They further argue, to the extent Plaintiffs seek to assert nationwide claims under

the law of 50 states, Plaintiffs lack standing and the non-California law claims must be dismissed.

Plaintiff contends they have standing to bring common law claims governed by laws which do not materially differ from state to state on behalf of a nationwide class. They maintain there is both general and specific jurisdiction over such claims, including for class members nationwide and the laws governing the claims of breach of contract, money had and received, negligent misrepresentation, conversion, and unjust enrichment do not materially vary by jurisdiction. Additionally, they contend application of California law for contracts to be performed in California is appropriate to purchasers nationwide and the unjust enrichment claim is brought solely under California law. Plaintiffs also argue whether California law differs from the laws of other states in a way that is material is not a proper inquiry at this stage of the proceedings and is more appropriately address during class certification.

Upon review of the consolidated complaint, the Court finds, with the exception of the claim for unjust enrichment, Plaintiffs' fail to specify which states laws govern their claims. Accordingly, they are subject to dismissal for failure to state a claim. *See Augustine v. Talking Rain Beverage Co., Inc.*, 386 F.Supp.3d 1317, 1333 (S.D.Cal. April 12, 2019) ("In order to determine whether a claim has been adequately pled, Plaintiffs must allege the applicable law.").

To the extent Plaintiffs seek to bring the common law claims under the laws of states in which they do not reside nor purchased any products, the claims are subject to dismissal for failure to state a claim. While there is a split in district courts within this circuit, there is a "growing trend among" California district courts to address the issue of standing at the pleading stage for claims brought "under the law of states in which no plaintiff resides or has purchased the products." *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1072 (S.D. Cal. 2020). All named Plaintiffs reside in California and none allege they purchased tickets from any other state where they do not reside. Accordingly, the Court finds

Plaintiffs lack standing to bring claims under the laws of the states where they do not reside or did not purchase tickets.  The Court grants Defendants' motion to dismiss claims for breach of contract, money had and received and negligent misrepresentation, intentional misrepresentation and conversion and unjust enrichment brought on behalf of a nationwide class to the extent they are asserted based on any state other than California.

**D.  Equitable Claims**

Defendants argue Plaintiffs' FAL, UCL, money had and received, and unjust enrichment claims must be dismissed because they only allow for equitable relief, and the CC makes clear that legal remedies under the CLRA and for breach of contract in the form of money damages are adequate.  Defendant maintains a plaintiff cannot proceed with equitable claims where he or she has alleged other claims presenting an adequate remedy at law.  Plaintiffs argue it is premature to dismiss the equitable claims until further case progression reveals whether Plaintiffs' may obtain legal relief.  Plaintiffs further argue a refund of the monies paid by Plaintiffs would not cure the false or misleading advertising of Defendants' policies, thus resulting in future harm.

Plaintiffs allege Defendants engage in misleading advertising by including the Cancellation Promise in their standardized agreements but fail to refund monies paid as promised in the event they cancel tickets and reservations.  At this stage of the proceedings, the Court finds it is unclear whether damages will adequately address the harm alleged.  As such, Plaintiff may plead equitable relief in the alternative.  *See Jeong v. Nexo Financial LLC*, 2022 WL 174236 (N.D.Cal. Jan. 19, 2022) (Determining the plaintiff may plead equitable claims in the alternative at the pleading stage).

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1.  Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** as to:

(a)  the  claims  against  Madam  Tussauds  Hollywood,  Madam  Tussauds  San Francisco, San Francisco Dungeon and Legoland Discovery Center San Jose;

(b) the California claims relating to CLRA, UCL, FAL, negligent misrepresentation, intentional misrepresentation and conversion; and

(c) the Nationwide Class claims for breach of contract, money had and received and negligent  misrepresentation,  intentional  misrepresentation  and  conversion  and  unjust enrichment to the extent they are asserted based on any state law other than California.

2.      The motion is otherwise **DENIED**.

3.      In the event Plaintiffs desire to amend their consolidated complaint to address the deficiencies noted above, they may file a First Amended Complaint **on or before May 5, 2023**.

DATED:    March 20, 2023

_____
JOHN A. HOUSTON
United States District Judge

28